# In the United States Court of Federal Claims

FACTOR2 MULTIMEDIA
SYSTEMS, LLC,

                Plaintiff,

      v.

  THE UNITED STATES,

                Defendant.

No. 24-cv-0475
(Filed: June 25, 2026)

Joseph J. Zito, DNL Zito, Washington, D.C., for Plaintiff.

Jhaniel James, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.  Also on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Scott Bolden, Director, and Grant D. Johnson, Of Counsel.

## OPINION AND ORDER

Meriweather, Judge.

      This case arises from a family of related patents pertaining to methods and systems for implementing two-factor authentication.  Plaintiff Factor2 Multimedia Systems, LLC ("Factor2"), alleges that the United States has violated its patents by utilizing some form of two-factor authentication on various websites and applications.  The United States has filed a Motion to Dismiss, ECF No. 11, arguing that the District Court for the Eastern District of Virginia ("EDVA") has already invalidated one of the patents in this family, and therefore Factor2 is collaterally estopped from asserting these related patents here.  Alternatively, the United States contends that the asserted patents are invalid for the same reasons stated in the EDVA opinion. After reviewing the pleadings, the parties' arguments,[1] and the relevant law, the Court issued an Order granting the United States' Motion to Dismiss and dismissing the Amended Complaint. This Memorandum Opinion provides the detailed analysis underlying that ruling and clarifies that the dismissal is with prejudice.

---

[1] This Opinion is based primarily on the following filings: Compl., ECF No. 1; Am. Compl., ECF No. 10; Def.'s Mot. to Dismiss, ECF No. 11 ("Mot."); Pl.'s Opp'n to Mot. to Dismiss, ECF No. 14 ("Resp."); Def.'s Reply in Supp. of Mot. to Dismiss, ECF No. 15 ("Reply").  Throughout, page citations to documents in the record refer to the document's original pagination, unless the page number is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.  The Court also relies on the parties' representations during oral argument.  See Cert. Oral Arg. Tr., ECF No. 18 ("Tr.").

BACKGROUND[2]

## A. Factual History

Factor2 is the current assignee and owner of all rights for the following patents at issue in this litigation:

> 8,281,129 "Direct Authentication System and Method Via Trusted Authenticators"
> 9,703,938 "Direct Authentication System and Method Via Trusted Authenticators"
> 9,727,864 "Centralized Identification and Authentication System and Method"
> 9,870,453 "Direct Authentication System and Method Via Trusted Authenticators"
> 10,083,285 "Direct Authentication System and Method Via Trusted Authenticators" and
> 10,769,297 "Centralized Identification and Authentication System and Method"

(collectively "Asserted Patents"). *See* Am. Compl. ¶¶ 1, 8, 11–16. Each of the Asserted Patents is a member of the same patent family, which pertains to a system or method of two-factor authentication. *See id.* ¶ 17; *id.* Ex. A at *1, ECF No. 1-2 (U.S. Patent No. 8,281,129); *id.* Ex. B at *1, ECF No. 1-3 (U.S. Patent No. 9,703,938); *id.* Ex. C at *1, ECF No. 1-4 (U.S. Patent No. 9,727,864); *id.* Ex. D at *1, ECF No. 1-5 (U.S. Patent No. 9,870,453); *id.* Ex. E at *1, ECF No. 1-6 (U.S. Patent No. 10,083,285); *id.* Ex. F at *1, ECF No. 1-7 (U.S. Patent No. 10,769,297). The '129 patent[3] was filed by named inventors Nader Asghari-Kamrani and Kamran Asghari-Kamrani ("the Asghari-Kamrani brothers") on January 18, 2006, as a continuation-in-part[4] to U.S. Patent No. 7,356,837, which was filed on August 29, 2001. *See id.* Ex. A at *1; *see also* Mot., Ex. 1 (U.S. Patent No. 7,356,837). The '938, '453, and '285 patents all purport to be continuations of the '129 patent and continuations-in-part of the '837 patent. *See* Compl., Ex. B at *1–2, *8; *id.* Ex. D at *1–2, *8; *id.* Ex. E at *1–2, *8. The '864 and '297 patents purport to be continuations of U.S. Patent No. 8,266,432, which is itself a continuation of the '837 patent. *See*

---

[2] As this case is at the Motion to Dismiss stage, this Opinion recites and assumes the truth of the factual allegations in the Complaint. *See Gen. Mills Inc. v. Kraft Foods Global, Inc.*, 487 F.3d 1368, 1371 n.1 (Fed. Cir. 2007). As explained further below, the Court additionally relies on matters of public record that are subject to judicial notice, including patent documents and litigation histories. *See Mobility Workx, LLC v. Unified Pats., LLC*, 15 F.4th 1146, 1151 & n.1 (Fed. Cir. 2021).

[3] For ease of reference, and following the common practice in patent cases, the Court utilizes the last three digits of the U.S. Patent Nos. to refer to each individual patent; *e.g.*, U.S. Patent No. 8,281,129 is referred to as "the '129 patent," and so forth. The parties also utilize this naming convention in their briefs.

[4] Every patent application must contain a disclosure, also called the specification, setting forth the background, summary, and detailed description of the invention claimed by the patent. *See, e.g.*, 35 U.S.C. § 112 (specification). "The difference between a continuation application and a continuation-in-part application is that a continuation contains the same disclosure found in an earlier application, whereas a continuation-in-part contains a portion or all of the disclosure of an earlier application together with added matter not present in the earlier application." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1321 n.2 (Fed. Cir. 2008).

*id.* Ex. C at *1–2, *9; *id.* Ex. F at *1–2, *10; Mot., Ex. 2 at *2 (U.S. Patent No. 8,266,432). The named applicants and inventors are identical for each of the Asserted Patents, and every Asserted Patent is subject to a terminal disclaimer[5] for any statutory term beyond the expiration date of the parent '837 and '432 patents. *See, e.g.*, Compl., Ex. F at *1. The '837 and '432 patents likewise list the Asghari-Kamrani brothers as inventors, and the '432 patent also includes a terminal disclaimer. *See* Mot., Ex. 1 at *2; *id.* Ex. 2 at *2.

**Asserted Patents**[6]
'837 patent (filed Aug. 29, 2001)

| (continuation) // | \\ (continuation-in-part) |
|---|---|
| '432 patent (filed Sept. 15, 2008) | **'129 patent** (filed Jan. 18, 2006) |
| ‖ | ‖ |
| **'864 patent** (filed Sept. 7, 2012) | **'938 patent** (filed Oct. 2, 2012) |
| ‖ | ‖ |
| **'297 patent** (filed June 30, 2017) | **'453 patent** (filed Sept. 21, 2017) |
| | ‖ |
| | **'285 patent** (filed Dec. 6, 2017) |

Factor2 states that "[t]he claims of the '297 patent are representative of the family of patents." Am. Compl. ¶ 18. Factor2 also identifies the '129 patent as being "representative of the method claims" asserted here. *Id.* ¶ 19. Aside from Claim 1 of the '297 patent and Claim 1 of the '129 patent, Factor2 recites no other specific claims in the Amended Complaint. *See id.* ¶¶ 18–19. Having identified no substantive differences among the Asserted Patents or the claims in the Amended Complaint, the Court likewise focuses on the '129 and '297 patents for purposes of this section.

The '129 patent proposes "a new 'two-factor' authentication technique" to combat "[f]raud and identity theft" by utilizing a "trusted authenticator," such as "a bank or other financial institution with whom the customer has a trusted relationship." Compl., Ex. A at *1. Claim 1 of the '129 patent claims the following invention:

A computer implemented method to authenticate an individual in communication with an entity over a communication network during a

---

[5] The term for a patent is generally 20 years from the date of filing. *See* 35 U.S.C. § 154(a)(2). A patentee may also disclaim the terminal part of a patent's term. *See id.* § 154(c)(1); 37 C.F.R. § 1.321(a). Such a terminal disclaimer is commonly used to restrict the term of a continuation patent to the term of the original patent to avoid rejection for "obviousness-type double patenting," i.e. unlawfully extending the term of a patent by claiming the same invention multiple times in succession. *See generally Boehringer Ingelheim Int'l GmbH v. Barr Lab'ys, Inc.*, 592 F.3d 1340, 1346–47 (Fed. Cir. 2010).

[6] For ease of reference, the Court includes this graph roughly depicting the relationships between the Asserted Patents in this family of related patents. The United States supplied a similar chart in its briefing. *See* Mot. at 4. The Asserted Patents at issue are in bold.

communication between the entity and the individual, the computer implemented method comprising:

receiving electronically a request for a dynamic code for the individual, which request is received from the individual by a trusted-authenticator's computer during an authentication of the individual by the entity;

calculating by the trusted-authenticator's computer the dynamic code for the individual in response to the request during the authentication of the individual by the entity, wherein the dynamic code is valid for a predefined time and becomes invalid after being used;

sending by the trusted-authenticator's computer electronically the dynamic code to the individual during the authentication of the individual by the entity;

receiving by the trusted-authenticator's computer electronically an authentication request from the entity to authenticate the individual based on a user information and the dynamic code included in the authentication request, wherein the entity receives the user information and the dynamic code from the individual; and

authenticating by the trusted-authenticator's computer an identity of the individual based on the user information and the dynamic code included in the authentication request, wherein the result of the authentication is provided to the entity.

*Id.* at \*12.  Subsequent claims expand upon the invention to include scenarios where the dynamic code is time-dependent, encrypted, or alphanumeric, or where the individual steps are completed by different computers, among other slight variations.  *See id.* at \*13–15.  For example, Claim 15 presents the same basic scenario but from the perspective of "a website" authenticating an individual by requesting "user identification and a dynamic code" and then verifying that information by sending an "authentication request message to the computer associated with the trusted-authenticator."  *Id.* at \*13.  The term "trusted-authenticator" is defined as "an entity that already knows the individual" or business, such as "a bank or other financial institution."  *Id.* at \*10.  The term "dynamic code" is undefined but appears elsewhere in the patent description as "dynamic key" or "SecureCode," which is defined as "a key or information that is variable and is provided to the individual by the individual's trusted-authenticator at the time it is needed for authentication," consisting of "an alphanumeric code" with "a different value each time" that may only be "valid for some period of time."  *Id.* (internal references omitted).  These terms and definitions are identical[7] in the '938, '453, and '285 patents.  *See* Compl., Ex. B at \*11; *id.* Ex. D at \*11; *id.* Ex. E at \*11.

Likewise, the '297 patent, filed on June 30, 2017, proposes a system and method "for enabling online entities to determine whether a user is truly the person who he says using a two-factor authentication technique" through an independent "authenticator."  Compl., Ex. F at \*1. As depicted in Figures 3 through 5 of the '297 patent, a user first signs up for an account with a

---

[7] Although the definitions sections appear to be identical, the '453 patent simply uses the term "SecureCode" instead of "dynamic code" in its claims.  *See* Compl., Ex. D at \*14–15. Whereas the '285 patent uses the undefined term "user-authentication code," with Claim 2 providing the scenario "wherein the user-authentication code is a SecureCode."  *Id.* Ex. E at \*14–15.

"Central-Entity" by providing their personal or financial information to receive a username and password. *Id.* at *7. To access a restricted website or purchase goods or services, the user requests a "SecureCode" from the Central-Entity and then provides their username and SecureCode to a "External-Entity." *Id.* at *8. The External-Entity then cross-references the provided information with the Central-Entity to confirm the user's identity. *Id.* at *9. Claim 1 of the '297 patent claims the following invention:

> An authentication system for enhancing computer network security by authenticating a user in an electronic communication between a computing device of the user and an online computer system, the authentication system comprising one or more computing devices configured to perform operations comprising:
> while the online computer system is connected to the computing device of the user via a communication network, electronically receiving a request for a SecureCode;
> generating the SecureCode;
> while the online computer system is connected to the computing device of the user via the communication network, electronically providing to the user the SecureCode in response to the request for the SecureCode, wherein:
> the SecureCode is invalid after a predetermined time passes,
> the SecureCode is invalid after one use of the SecureCode for authentication, and
> the SecureCode is only valid for authenticating the user; and
> while the online computer system is connected to the computing device of the user via the communication network, electronically receiving from the online computer system a digital authentication request for authenticating the user, wherein:
> the digital authentication request comprises a digital identity of the user, and
> the digital identity includes the SecureCode; and
> while the online computer system is connected to the computing device of the user via the communication network, authenticating the user by evaluating a validity of the SecureCode included in the digital authentication request.

*Id.* at *12–13. Subsequent claims of the '297 patent offer minor variations on the same invention, such as SecureCode that includes a symbol or electronic communication for accessing a restricted website. *See id.* at *13–14. For example, Claim 19 centers around an "authentication system" that communicates with "the computing device of the user" to confirm whether the user correctly submitted "a SecureCode." *Id.* The term "SecureCode" is defined as "any dynamic, non-predictable and time dependent alphanumeric code, secret code, PIN or other code, which may be broadcast to the user over a communication network, and may be used as part of a digital identity to identify a user as an authorized user." *Id.* at *10. The term "Central-Entity" is defined as "any party that has user's personal and/or financial information, UserName, Password and generates dynamic, non-predictable and time dependent SecureCode for the user," such as "banks, credit card issuing companies or any intermediary service companies." *Id.* The patent description also defines the term "External-Entity" as "any party offering goods or services that users utilize by directly providing their UserName and SecureCode as digital identity," such as

"a merchant, service provider or an online site," or any "entity that receives the user's digital identity indirectly from the user through another External-Entity, in order to authenticate the user," including "a bank or a credit card issuing company." *Id.* These terms and definitions are identical in the '864 patent, as well as the related '837 and '432 patents. *Compare id.*, *with id.* Ex. C at *9; Mot., Ex. 1 at *8; *id.* Ex. 2 at *9. Even the accompanying figures and background information are largely identical among the '837, '297, '864, and '432 patents. *See* Compl., Ex. C at *4–11; *id.* Ex. F at *5–12; Mot., Ex. 1 at *3–10; *id.* Ex. 2 at *4–11.

Although Factor2 does not raise a claim based on the related '432 patent, it is relevant to this litigation. *See, e.g.*, Compl., Ex. F at *2 (noting that the '297 patent is a continuation of the '432 patent). The '432 patent, filed on September 15, 2008, purports to be a continuation of the '837 patent. *See* Mot., Ex. 2 at *1. Claim 1 of the '432 patent claims the following invention:

> A method for authenticating a user during an electronic transaction between the user and an external-entity, the method comprising:
> receiving electronically a request for a dynamic code for the user by a computer associated with a central-entity during the transaction between the user and the external-entity;
> generating by the central-entity during the transaction a dynamic code for the user in response to the request, wherein the dynamic code is valid for a predefined time and becomes invalid after being used;
> providing by the computer associated with the central-entity said generated dynamic code to the user during the transaction;
> receiving electronically by the central-entity a request for authenticating the user from a computer associated with the external-entity based on a user-specific information and the dynamic code as a digital identity included in the request which said dynamic code was received by the user during the transaction and was provided to the external-entity by the user during the transaction; and
> authenticating by the central-entity the user and providing a result of the authenticating to the external-entity during the transaction if the digital identity is valid.

*Id.* at *11. Once again, subsequent independent and dependent claims all offer slight variations on the same general invention. *See id.* at *11–13.

## B. Litigation History

In 2015, the Asghari-Kamrani brothers filed suit for patent infringement against the United Services Automobile Association ("USAA") in the Eastern District of Virginia. *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 3670804, at *1 (E.D. Va. July 5, 2016), *amended*, No. 2:15cv478, 2016 WL 11642758 (E.D. Va. Aug. 15, 2016). The plaintiffs alleged that USAA infringed multiple claims of the '432 patent. *Id.* That patent, much like the Asserted Patents here, pertained "to a system and method . . . for centralized identification and authentication of users and their transactions to increase security in e-commerce." *Id.* The district court reasoned that Claim 1 of the '432 patent was representative of the asserted dependent and independent claims. *Id.* at *2. The district court further noted that all asserted

6

"claims of the patent require a Central-Entity, a user, and an External-Entity," as well as "the use of a dynamic code." *Id.*

The USAA moved to dismiss the complaint, asserting that "the claims of the '432 patent are directed to an abstract idea and are thus ineligible for patent protection." *Id.* at *1. Applying the Supreme Court's two-step framework for patentability[8] to the representative claim of the '432 patent, the district court held that the asserted claims "are invalid because they are directed to an abstract idea and thus ineligible for patent protection." *Id.* at *6. This was because:

> despite the electronic setting and purportedly Internet specific problem addressed, the patent claims are directed to a common method for solving an old problem. The claims are directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction. This formulation is admittedly verbose. It is verbose because the patent claims combine two abstract ideas: the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction. It is an obvious combination, and nothing about the combination removes the patent claims from the realm of the abstract.

*Id.* at *4. Analogizing the claimed concept to furniture sales and espionage activity, the district court reasoned that "the concept could easily be performed by hand" and was in no way dependent upon "implementation by computers." *Id.* Addressing whether the claims' elements somehow "transform the nature of the claims into a patent-eligible application," the district court found no "inventive concept." *Id.* at *5. Instead, the district court found that the individual "claim elements describe[] conventional computer functions," and even considered together, "[t]hey simply instruct a generic computer or computers to verify the identity of a participant to a transaction using a randomly generated code." *Id.* The district court further rejected the plaintiffs' arguments on claim construction as "empty." *Id.* at *6. Finding the claims of the '432 patent invalid, the district court dismissed the complaint with prejudice. *Id.*

Following the district court's invalidation of the '432 patent, the Patent Trial and Appeal Board ("PTAB") entered concurrent decisions similarly concluding that those same claims of the '432 patent were "unpatentable as obvious." *United Servs. Auto. Ass'n v. Asghari-Kamrani*, No. CBM2016-00064, 2017 WL 3525359, at *24 (P.T.A.B. Aug. 15, 2017); *see accord United Servs. Auto. Ass'n v. Asghari-Kamrani*, No. CBM2016-00063, 2017 WL 3525356, at *24 (P.T.A.B. Aug. 15, 2017). On appeal, the Federal Circuit issued a one-sentence decision summarily

---

[8] The *Asghari-Kamrani* court applied Section 101 of the Patent Act and the two-step *Alice*/*Mayo* framework to determine whether a patent is directed to ineligible abstract ideas. *See* 2016 WL 3670804, at *2–3; *see generally* 35 U.S.C. § 101; *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217–18 (2014); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 72–73 (2012). Under that framework, step one requires a court to determine if the claims are directed to a patent-ineligible concept, such as abstract ideas. *See Alice*, 573 U.S. at 217. If so, step two asks whether the claims contain an "inventive concept" and "whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78).

affirming the district court's ruling.  *Asghari-Kamrani v. United Servs. Auto. Ass'n*, 737 F. App'x 542 (Fed. Cir. 2018), *cert. denied*, 587 U.S. 919 (2019).  The Federal Circuit simultaneously vacated and dismissed as moot appeals of the PTAB decisions based on affirmance of the district court's ruling.  *Asghari-Kamrani v. United Servs. Auto. Ass'n*, 737 F. App'x 539 (Fed. Cir. 2018).

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[T]he court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in favor of the plaintiff." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347 (Fed. Cir. 2018).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The affirmative defenses of res judicata and collateral estoppel are also properly considered under a RCFC 12(b)(6) motion to dismiss." *Copar Pumice Co. v. United States*, 112 Fed. Cl. 515, 527 (2013).

The Court "must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference" in ruling on a motion to dismiss.  *Rocky Mtn. Helium, LLC v. United States*, 841 F.3d 1320, 1325–26 (Fed. Cir. 2016) (quoting *Tellabs, Inc. v. Makor Issues & Rts, Ltd.*, 551 U.S. 308, 322 (2007)).  Courts may also generally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record" on a motion to dismiss.  *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed.2004)) (citation modified).  In the context of patent disputes, patent documents and "[p]rosecution histories constitute public records." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018); *see also Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993) (taking judicial notice of related patent on appeal).

## DISCUSSION

### I.     The Court Excludes Certain Evidence Outside the Pleadings.

Rule 12(d) of the Rules of the Court of Federal Claims ("RCFC") provides that on a motion to dismiss for failure to state a claim under Rule 12(b)(6), all matters outside the pleadings must be excluded.  However, this Court has clarified that it "may properly consider allegations in the complaint, exhibits attached to the complaint, and public record materials under an RCFC 12(b)(6) motion to dismiss." *Copar Pumice Company*, 112 Fed. Cl. at 527.  Judicial notice of an adjudicative fact is permissible where it "is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" and therefore "is not subject to reasonable dispute."  Fed. R. Evid. 201(b).

The parties attached copious exhibits to their briefs without mentioning whether or how the Court can consider that outside evidence at the current procedural posture.  The Court ordered the parties to each file a notice either setting forth the legal basis for each exhibit or

arguing whether the Court should convert the matter into a motion for summary judgment. *See* Minute Order (May 7, 2025). The parties complied, largely agreeing on which exhibits the Court may consider. *See* Def.'s Notice, ECF No. 19; Pl.'s Notice, ECF No. 20. The parties agree that Exhibits 1 through 11 to the United States' Motion to Dismiss are public records published on the U.S. Patent and Trade Office ("USPTO") website that pertain to the family of patents asserted here. *See* Def.'s Notice at 3–4; Pl.'s Notice at 3–4. The parties also agree that the Court may take notice of Factor2's exhibits as public documents. *See* Def.'s Notice at 4–5; Pl.'s Notice at 3–4. The parties raise no objections as to those exhibits.[9]

However, the parties recognize that not all submitted exhibits fall under an established exception to Rule 12(d). Exhibit 12 to the United States' motion is a Law360 article from April 2, 2024. *See* Mot., Ex. 12, ECF No. 11-12. Exhibit 13 is a copy of email correspondence from opposing counsel dated July 26, 2024. *See id.*, Ex. 13, ECF No. 11-13. Because those exhibits "are not official government publications" and otherwise lack "assurance[s] of reliability" necessary for judicial notice under Rule 201, Factor2 argues the Court must exclude those documents from consideration or convert the Motion and permit supplemental briefing. Pl.'s Notice at 4–5. The United States acknowledges this oversight and states its intent to withdraw those exhibits from its Motion. *See* Def.'s Notice at 4.

The Court agrees with the parties' general assessment of the evidence. Because Exhibits 1–11 to the Motion and Exhibits A–D to the Response are publicly available and subject to judicial notice, the Court need not exclude them at this stage. Neither party objects to the Court's reliance on those documents—at least for purposes of judicially noticing the documents themselves, rather than for the truth of the statements contained therein. The Court therefore proceeds to evaluate the parties' arguments in light of those attached documents. In contrast, Exhibits 12 and 13 to the Motion do not meet the requirements for judicial notice, and the United States explains that it is no longer relying on those documents.[10] Accordingly, Exhibits 12 and 13 to the Motion will be excluded from the Court's consideration of the pending Motion to Dismiss.

## II.     Factor2 is Collaterally Estopped from Relitigating the Asserted Patents.

### A.     The Elements of Collateral Estoppel.

The United States moves to dismiss Factor2's Amended Complaint as collaterally estopped by the prior *Asghari-Kamrani* litigation. *See* Mot. at 11–20. "[O]nce the claims of a patent are held invalid in a suit involving one alleged infringer, an unrelated party who is sued for infringement of those claims may reap the benefit of the invalidity decision under principles

---

[9] Further, the Court can generally take judicial notice of the *Asghari-Kamrani* court's decisions and public docket for those same reasons. *See, e.g.*, *L.A. Biomed. Rsch. Inst. v. Eli Lilly & Co.*, 849 F.3d 1049, 1061 n.6 (Fed. Cir. 2017) (noting in a patent dispute that courts "can properly take judicial notice of the records of related court proceedings").

[10] Ostensibly, the United States included those documents to establish that Factor2 "is in privity with the original owners of the Asserted Patents." Def.'s Notice at 4. But because Factor2 concedes that issue, *see* Pl.'s Notice at 4 n.2, the documents are no longer necessary.

of collateral estoppel." *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1315 (Fed. Cir. 2015) (quoting *Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1577 (Fed. Cir. 1994)). Under the doctrine of collateral estoppel, also called issue preclusion, "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." *Innovad Inc. v. Microsoft Corp.*, 260 F.3d 1326, 1334 (Fed. Cir. 2001). The Federal Circuit applies the following four-prong test to determine whether collateral estoppel applies:

> (1) the issue sought to be precluded must be the same as the one involved in the prior action [("Identical Issue Prong")];
> (2) the issue must have been actually litigated;
> (3) the issue must have been determined by a valid and final judgment; and
> (4) the determination must have been essential to the prior judgment.

*Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1347 (Fed. Cir. 2022). "The party against whom preclusion is asserted must also have been a party or been in privity with a party to the prior adjudication." *Id.* at 1346 n.4. Complete privity of all parties is not necessary, however, as "collateral estoppel is applied against the losing party in the original action even in situations where the party asserting collateral estoppel was not a party to the original action." *Id.* at 1347. But where the parties to a subsequent action are not identical, the Federal Circuit often reframes these four prongs to include whether "the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action." *Innovad*, 260 F.3d at 1334; *see also Soverain Software*, 778 F.3d at 1315-16.[11]

The Identical Issue Prong is especially pertinent here. Federal Circuit "precedent does not limit collateral estoppel to patent claims that are identical. Rather, it is the identity of the *issues* that were litigated that determines whether collateral estoppel should apply." *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013). Collateral estoppel applies where any "differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity." *Id.*; *see also Bourns, Inc. v. United States*, 537 F.2d 486, 493 (Ct. Cl. 1976) ("Where the differences revealed by a comparison of the claims do not vary the relevant issues bearing on obviousness, collateral estoppel should apply."). Thus, when presented with "substantially similar" patent claims, the use of "slightly different language to describe substantially the same invention" is generally immaterial. *Ohio Willow Wood*, 735 F.3d at 1342. In other words, "patent claims need not be identical for collateral estoppel to apply. Rather, collateral estoppel requires that the *issues of patentability* be identical." *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022) (internal citation omitted); *see*

---

[11] Another overarching concern of applying non-mutual collateral estoppel is fundamental fairness. *See Blonder-Tongue Lab'ys, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349 (1971) (rejecting "rigid requirements of mutuality" in subsequent patent disputes and endorsing approach of considering whether "it is appropriate and fair to impose an estoppel against a party who has already litigated an issue once and lost"); *In re Freeman*, 30 F.3d 1459, 1467 (Fed. Cir. 1994) ("The doctrine of issue preclusion is premised on principles of fairness. Thus, a court . . . [has] some discretion to decide whether a particular case is appropriate for application of the doctrine." (citations omitted)). Neither party argues this underlying principle here.

*also Soverain Software*, 778 F.3d at 1319 (noting that "[c]omplete identity of claims is not required" and "difference in claim scope [i]s not fatal to the application of estoppel").

## B.    The United States Properly Raised Collateral Estoppel in Its Motion to Dismiss.

"The affirmative defenses of res judicata and collateral estoppel are . . . properly considered under a RCFC 12(b)(6) motion to dismiss." *Copar Pumice*, 112 Fed. Cl. at 527; *see also Fletcher v. United States*, 178 Fed. Cl. 241, 249 (2025); *Chisolm v. United States*, 82 Fed. Cl. 185, 193, *aff'd* 298 F. Ap'x 957 (Fed. Cir 2008). Factor2 contends otherwise, asserting that the Court cannot, or should not, resolve collateral estoppel on a motion to dismiss. *See* Resp. at 8, 11, 21. Specifically, Factor2 contends that dismissal would be improper because the United States has "not submitted any supporting evidence, only attorney argument." *Id.* at 21. But "[t]he application of issue preclusion presents a question of law." *SynQor, Inc. v. Vicor Corp.*, 988 F.3d 1341, 1347 (Fed. Cir. 2021). Accordingly, courts routinely resolve collateral estoppel at the motion to dismiss stage. *See, e.g.*, *Reese v. Verizon Cal., Inc.*, 498 Fed. App'x 980, 984 (Fed. Cir. 2012) (affirming grant of motion to dismiss in patent case based on collateral estoppel); *Winfrey v. U.S. Dep't of Com.*, No. 2024-1260, 2024 WL 4284692, at *3 (Fed. Cir. Sept. 25, 2024) (affirming grant of motion to dismiss based on collateral estoppel); *Khan v. Artivion, Inc.*, No. 2023-2347, 2024 WL 3419942, at *1 (Fed. Cir. July 16, 2024) (same). The fact that the allegedly estoped claims concern patentability does not require deviation from that general rule. *See generally, e.g.*, *Allergan, Inc. v. Sandoz, Inc.*, 681 F. App'x 955, 959 (Fed. Cir. 2017) (analyzing whether collateral estoppel required dismissal of patent infringement claims); *Bondyopadhyay v. United States*, 149 Fed. Cl. 176, 185 (2020), *aff'd*, 850 F. App'x 761 (Fed. Cir. 2021) (dismissing patent infringement case because res judicata precluded litigating claims that were resolved in prior litigation). In any event, Factor2 has identified no factual disputes pertinent to the issue preclusion analysis. *See* Reply at 16 n.7.

## C.    The Asserted Patents Present Identical "Issues of Patentability" as the Related '432 Patent Invalidated in the *Asghari-Kamrani* Litigation.

The United States argues that, while the claims of the Asserted Patents themselves vary slightly in phrasing, "the issue of patent subject matter eligibility" is identical to that litigated in the *Asghari-Kamrani* case. Mot. at 16. The United States asserts that the Asserted Patents "merely use slightly different language to describe substantially the same invention" set forth in the '432 patent. *Id.* at 18. The Court agrees. For example, focusing on Claim 1 of the '129, '297, and '432 patents,[12] the language follows this basic pattern:

| Claim 1 of the '432 patent | Claim 1 of the '129 patent | Claim 1 of the '297 patent |
|---|---|---|
| A **method for authenticating a user** during an **electronic transaction between the** | A **computer implemented method to authenticate an individual** in communication | An **authentication system** for enhancing computer network security by |

___

[12] The United States provides a similar table for comparison in its Motion. *See* Mot. at 16–18. In the table here, terms in **bold** appear to be the primary steps in the claimed process or method, while ***bold italics*** denote similar language apparently moved to a different step.

| | | |
|---|---|---|
| **user and an external-entity**, the method comprising: | with an entity over a communication network during a **communication between the entity and the individual**, the computer implemented method comprising: | **authenticating a user** in an **electronic communication between a computing device of the user and an online computer system**, the authentication system comprising one or more computing devices configured to perform operations comprising: |
| **receiving electronically a request for a dynamic code** for the user by a computer associated with a **central-entity** during the transaction between the user and the external-entity; | **receiving electronically a request for a dynamic code** for the individual, which request is received from the individual by a **trusted-authenticator's computer** during an authentication of the individual by the entity; | while the **online computer system** is connected to the computing device of the user via a communication network, **electronically receiving a request for a SecureCode**; |
| **generating** by the central-entity during the transaction **a dynamic code** for the user in response to the request, wherein the dynamic code is *valid for a predefined time* and *becomes invalid after being used*; | **calculating** by the trusted-authenticator's computer **the dynamic code** for the individual in response to the request during the authentication of the individual by the entity, wherein the dynamic code is *valid for a pre-defined time* and *becomes invalid after being used*; | **generating the SecureCode**; |
| **providing** by the computer associated with the central-entity said generated **dynamic code to the user** during the transaction; | **sending** by the trusted-authenticator's computer electronically the **dynamic code to the individual** during the authentication of the individual by the entity; | while the online computer system is connected to the computing device of the user via the communication network, **electronically providing to the user the SecureCode** in response to the request for the SecureCode, wherein: the SecureCode *is invalid after a predetermined time passes*, the SecureCode is *invalid after one use* of the SecureCode for authentication, and the SecureCode is only valid for authenticating the user; and |

| | | |
|---|---|---|
| **receiving electronically** by the central-entity **a request for authenticating the user** from a computer associated with the external-entity **based on a user-specific information and the dynamic code** as a digital identity included in the request which said dynamic code was received by the user during the transaction and was provided to the external-entity by the user during the transaction; and | **receiving** by the trusted-authenticator's computer **electronically an authentication request** from the entity **to authenticate the individual based on a user information and the dynamic code** included in the authentication request, wherein the entity receives the user information and the dynamic code from the individual; and | while the online computer system is connected to the computing device of the user via the communication network, **electronically receiving** from the online computer system **a digital authentication request for authenticating the user**, wherein: the digital authentication request comprises a **digital identity of the user**, and the digital identity includes **the SecureCode**; and |
| **authenticating** by the central-entity **the user** and providing a result of the authenticating to the external-entity during the transaction **if the digital identity is valid**. | **authenticating** by the trusted-authenticator's computer an identity of **the individual based on the user information and the dynamic code** included in the authentication request, wherein the result of the authentication is provided to the entity. | while the online computer system is connected to the computing device of the user via the communication network, **authenticating the user by evaluating a validity of the SecureCode** included in the digital authentication request. |

*See* Mot., Ex. 2 at *11 (emphasis added); Compl., Ex. A at *12 (emphasis added); *id.* Ex. F at *12–13 (emphasis added).

The Asserted Patents and the invalidated '432 patent all contain the following similar elements, albeit described using slightly different language: (1) a user/individual that uses the invention for authentication ("user"); (2) a trusted-authenticator/central-entity/authentication system that authenticates the user ("authenticator"); (3) a dynamic code/SecureCode used to authenticate the user ("code"); and (4) an external-entity/entity/online computer system that requires authentication of the user for access to goods or services ("merchant"). The core steps of each claimed invention can be summarized thusly: (1) user signs up with authenticator for authentication service; (2) user or merchant requests code from authenticator during a transaction; (3) authenticator generates a random, time-sensitive code; (4) authenticator sends code to user; (5) user provides merchant with code; (6) merchant sends code to authenticator; and (7) authenticator confirms to merchant if code is verified and user is authenticated. *See* Compl., Ex. F at *7–9 (figures accompanying '297 patent). In other words, the Asserted Patents and the '432 patent combine the use of a time-sensitive, random code with a third-party authenticator to validate the identity of a user in an online transaction. Although the Asserted Patents reference computers, communication networks, and other online components, *see, e.g.*, Compl., Ex. A at *12, none of the technological references go beyond generic computers used for basic computer functions such as generating and sending codes.

13

The similarities do not stop there—as noted above, the '864 and '297 patents are continuations of the invalidated '432 patent, and thus share nearly identical disclosures, definitions, and other supporting materials. *Compare* Compl., Ex. C at *1–11, *and id.* Ex. F at *1–12, *with* Mot., Ex. 2 at *2–11. The '129, '938, '453, and '285 patents—continuations-in-part of the common parent '837 patent—share their own nearly identical sets of disclosures. *Compare* Compl., Ex. A at *1–12, *and id.* Ex. B at *1–13, *and id.* Ex. D at *1–14, *and id.* Ex. E at *1–14, *with* Mot., Ex. 2 at *2–11. The later filed '453 and '285 patents even cross-reference the '432 patent as a related application. *See* Compl., Ex. D at *2–3, *8; *id.* Ex. E at *2–3, *8. Although the individual claims are verbose, containing vague and arguably superfluous language, the subject matter of the claimed invention is basic two-factor authentication. *See, e.g.*, *id.* Ex. A at *1; *id.* Ex. F at *1.

If this conclusion sounds familiar, it is because the District Court for the Eastern District of Virginia reached essentially the same result. *See Asghari-Kamrani*, 2016 WL 3670804, at *4 (reasoning "the patent claims combine two abstract ideas" for authentication, resulting in "an obvious combination" that fails to "remove[] the patent claims from the realm of the abstract"). That court likewise found the '432 patent "admittedly verbose" and noted that it merely combined two abstract but well-known methods of authentication: "the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction." *Id.* The *Asghari-Kamrani* court also found that "sending data electronically, generating a random code, and comparing two pieces of data to see if they are the same" were little more than "conventional computer functions." *Id.* at *5. These are substantially the same essential elements the Court has identified in the Asserted Patents used in substantially the same manner. In other words, the issues presented here are effectively identical. *See Ohio Willow Wood*, 735 F.3d at 1342. The Court has reviewed the claims of the Asserted Patents, as well as those of the invalidated '432 patent, and the Court has no qualms about concluding that the Asserted Patents merely use "slightly different language to describe substantially the same invention." *Id.* Accordingly, the United States has satisfied the "same issues" prong of the test for collateral estoppel.[13]

---

[13] The United States raises other arguments in support of finding that the patentability issues raised in the Asserted Patents are identical to those in the invalidated '432 patent. For example, the United States argues that "[a] terminal disclaimer is a strong clue, though not a dispositive one, that . . . claims among a patent family lack[] a patentable distinction." Mot. at 19 (citing *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018)). "Terminal disclaimers are almost always filed to overcome an [obviousness-type double patenting] rejection" when filing a continuation or continuation-in-part of an existing patent. *In re Cellect, LLC*, 81 F.4th 1216, 1228 (Fed. Cir. 2023), *cert. denied sub nom. Cellect, LLC v. Vidal*, 145 S. Ct. 153 (2024). Each of the Asserted Patents is subject to a terminal disclaimer. *See, e.g.*, Compl., Ex. A at *1. Factor2 does not address this argument in its briefing. At oral argument, counsel for Factor2 attempted to explain that the "[t]erminal disclaimers were filed as a matter of routine just to acknowledge that they all go back to the same priority date." Tr. at 32:18–22. But *SimpleAir* rejected the premise that patent applicants might willingly "forfeit the right to alienate their patents, and in certain cases years of exclusivity, as a mere procedural expedient" by filing terminal disclaimers. 884 F.3d at 1168. Instead, particularly in the context of claim or issue preclusion, "a terminal disclaimer is a strong clue that a patent . . . lacked patentable distinction

**C.**    **Factor2's Arguments Focusing on Alleged Differences Among the Asserted Patents to Dispute the "Identical Issue" Prong Are Unavailing.**

Factor2 raises several objections to the United States' representations pertaining to the Identical Issue Prong, but none of those arguments are persuasive.  First, Factor2 faults the United States for focusing solely on one claim each from the '129 and '297 patents without addressing any of the other "over 70 total claims" or "presenting any argument regarding four of the Asserted Patents."  Resp. at 11.  But Factor2's own Amended Complaint likewise only recites Claim 1 of the '129 and '297 patents.  *See* Am. Compl. ¶¶ 18–19.  Indeed, Factor2 explicitly states that "[t]he claims of the '297 patent are representative of the family of patents," *id.* ¶ 18, and the "[m]ethod claims of the '129 Patent are also representative of the method claims of the Patents-in-suit," *id.* ¶ 19.  It is well-established that "factual allegations in operative pleadings are judicial admissions of fact."  *El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 876 (D.C. Cir. 2014); *see accord Sys. Dynamics Int'l, Inc. v. United States*, 130 Fed. Cl. 499, 517 (2017).  Indeed, where the plaintiff has voluntarily identified representative claims in a patent infringement suit, courts will hold parties to that representation.  *See, e.g.*, *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1384 (Fed. Cir. 2008) (finding no error where district court failed to consider other claims when parties stipulated to "a representative claim on which the case rises or falls").  The *Asghari-Kamrani* court rejected similar arguments, noting that "a court does not need to address each individual claim if the court can identify a representative claim and 'all claims are substantially similar and linked to the same abstract idea.'"  2016 WL 3670804, at *3 (quoting *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).  The Court holds Factor2 to its choice of wording in the operative pleadings.

Even if the Court were to allow Factor2 to renege on those admissions, the Court would nonetheless find the relevant '297 and '129 claims representative.  "Courts may treat a claim as representative in certain situations, such as if the patentee does not present any *meaningful argument* for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative."  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (emphasis added).  Rather than provide any "meaningful argument" on purported differences among the claims and Asserted Patents, Factor2 simply recites a claim from each of the Asserted Patents and insists, without elaboration or citation to authority, that each is distinct from the '432 patent.  *See* Resp. 13–21.  For example, Factor2 highlights that the terms "Central-Entity" and "External-Entity" have been replaced in several of the Asserted Patents with other terms such as "trusted authenticator" and "website" in Claim 15 of the '129 patent, or "authentication system" and "online computer system" in Claim 1 of the '297 patent.  *Id.* at 14, 17.  Factor2 does not argue those terms mean anything substantially different; they are functional equivalents with different names.  *See* Reply at 5–6.  If a patentee could overcome an

_____

over the parent."  *Id.*  Nonetheless, a terminal disclaimer "does not give rise to a presumption," and a court must "compar[e] the patents' claims along with other relevant transactional facts" to determine any preclusive effect.  *Id.*  The Court, therefore, does not rely on the terminal disclaimers except to confirm what is already evident from the patent documents themselves— that the claims of the Asserted Patents are materially indistinct from those of the invalidated '432 patent.

invalidity finding simply by changing the names of relevant terms, the doctrine of collateral estoppel would be toothless.  Fortunately, that is not the case; "the mere use of different words in these portions of the claims does not create a new issue of invalidity."  *Ohio Willow Wood*, 735 F.3d at 1343.

Factor2 further objects to the United States' description of the Asserted Patents as substantively identical by pointing to Claim 19 of the '297 patent, which relies on "a series of codes and responses" as opposed to "participants" or "third party intermediaries."  Resp. at 2.  However, this argument, asserted cursorily in the introduction section, is never revisited or fleshed out.  Instead, Factor2 raises Claim 15 of the '129 patent, because the terms "Central-Entity" and "External-Entity" are replaced with "trusted authenticator" and "website."  *Id.* at 13–14.  But other than slightly different terms, no substantive difference is identified.  Factor2 also points to Claim 15 of the '938 patent in passing, noting only that it "adds multiple computer systems performing different functions."  *Id.* at 15.  Once again, Factor2 supplies no "meaningful argument," *Berkheimer*, 881 F.3d at 1365, for differentiating the unasserted claims from those identified as representative in the Amended Complaint.  The Court will not make Factor2's arguments for it—cursory opposition to a motion to dismiss is tantamount to waiver.[14]

Next, Factor2 attempts to distinguish the issues presented here from the *Asghari-Kamrani* court's decision by noting that the district court "focused on the ability of a human to accomplish something approximating the methods claimed in the '432 Patent," Resp. at 12, whereas the Asserted Patents' steps "could not be performed without specialized computers running specialized algorithms over a computer network."  *Id.* at 15; *see also id.* at 16–17.  Factor2 suggests that *Asghari-Kamrani* analyzes the patent claims through an "analog" lens, misinterpreting terms like "entity" to refer to a process that did not involve the use of computers.  *Id.* at 13.  Factor2 suggests that the Asserted Patents' inherent reliance on computers distinguishes them from the claims deemed unpatentable in *Asghari-Kamrani* and demonstrates that the two cases present different issues.  But the district court plainly understood that the '432 patent contemplated implementation by computers.  The *Asghari-Kamrani* court acknowledged that the claims in the '432 Patent "require the use of a computer" but concluded that they involved an abstract concept instead of an improvement in computer technology.  2016 WL

---

[14] "A party's failure to raise an argument in an opening or responsive brief constitutes waiver."  *Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 297 (2024) (quoting *Sarro & Assocs., Inc. v. United States*, 152 Fed. Cl. 44, 58–59 (2021)).  Other courts have likewise noted that "it takes more than incidental support or cursory discussion to sufficiently develop a legal argument."  *United States ex rel. Landis v. Tailwind Sports Corp.*, 51 F. Supp. 3d 9, 53 (D.D.C. 2014), *on reconsideration in part*, 160 F. Supp. 3d 253 (D.D.C. 2016), *and clarified on denial of reconsideration*, No. 1:10-CV-00976 (CRC), 2016 WL 3197550 (D.D.C. June 8, 2016); *see also Reese v. Wells Fargo US Holdings, Inc.*, No. 19-CV-799-S-BK, 2020 WL 874807, at *1 (N.D. Tex. Jan. 30, 2020), *report and recommendation adopted*, No. 3:19-CV-0799-S-BK, 2020 WL 870227 (N.D. Tex. Feb. 20, 2020) (noting that "if a plaintiff fails to respond to an argument raised in a motion to dismiss, it is deemed to be abandoned").  This Court's rules are no different.  *See* RCFC 7(b)(1)(B) (requiring every motion to "state with particularity the grounds for seeking the order"); RCFC 5.4(a)(2)(E) (requiring briefs to contain "a clear statement of the argument, setting forth the points of fact and law being presented and the authorities relied upon"); RCFC 5.4(a)(3) (requiring same for responses).

3670804, at *4.  Even assuming computer systems are necessary for the claimed invention, the district court reasoned that any purported "advantages to performing the claimed method on computers . . . do not transform the method into one directed to an improvement of computer technology."  *Id.* at *5.  The district court found the computer-specific processes described little more than "conventional computer functions," taken individually, and continued to consider the claim elements in total:

> Considered as an ordered combination, the claim elements do not add anything inventive to the abstract concept underlying them.  They simply instruct a generic computer or computers to verify the identity of a participant to a transaction using a randomly generated code. . . . They have generic computers perform an old method of authentication.  This is not enough to transform a patent-ineligible abstract idea into a patent-eligible invention.

*Id.* (internal citations omitted).  The district court concluded that "there is nothing inventive about [the '432] patent claims," and finding otherwise would "allow Plaintiffs to patent a generic computer implementation of an abstract idea" to effectively "monopolize the idea itself and inhibit further discovery and invention."  *Id.* at *6.

Factor2 further argues that minor alterations in the Asserted Patents, such as "during electronic communication" as opposed to "during an electronic transaction," represent "no trivial change, but serve[] to alter the claims such that the patent-eligible subject matter is easily seen."  Resp. at 13.  Factor2 thus insists that many of the asserted "claims cannot be performed without specialized computers running specialized algorithms over a computer network."  *Id.* at 15.  Factor2 cites no binding or persuasive authority in support of these arguments; and the Court is unpersuaded.[15]  The Federal Circuit squarely rejected similar arguments that "the mere existence of different language in the adjudicated claims . . . and unadjudicated claims . . . is sufficient to

---

[15] Factor2 also highlights portions of the patent histories for the '938 and '864 patents.  *See* Patent File History Excerpts, Resp., Exs. C–D.  Factor2 argues that the '938 and '864 patents "were amended after the opinion was rendered invalidating claims of the '432 Patent," and those amendments "specifically recite elements that distinguish the new claims from the claims that were held invalid by the Virginia district court."  Resp. at 8–9.  But if anything, this evidence merely suggests that many of the obvious differences between the patents—such as replacing "authenticator" with "authentication system," or "entities" with "computer systems," Resp., Ex. C at 9—are superficial alterations added to circumvent the district court's invalidation of the '432 patent in *Asghari-Kamrani*.  Aside from a general citation to these 20-page exhibits in a single paragraph without pinpoint citations or any further explanation, *see* Resp. at 9, Factor2 fails to sufficiently develop this argument or cite any relevant authority.  As the Seventh Circuit famously proclaimed: "Judges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).  Arguments consisting of "a single unreasoned paragraph" in a brief are generally deemed waived.  *Id.*; *see also Parus Holdings, Inc. v. Google LLC*, 70 F.4th 1365, 1371-72 (Fed. Cir. 2023).  Whatever import Factor2 attaches to these exhibits is undercut by failing to articulate any reason why the Court should not view these minor alterations as anything more than "slightly different language [used] to describe substantially the same invention."  *Ohio Willow Wood*, 735 F.3d at 1342.

17

overcome collateral estoppel." *Ohio Willow Wood*, 735 F.3d at 1342. Moreover, although Factor2 argues that the Asserted Patents rely on "specialized algorithms," Resp. at 15, 17–18, none of the Asserted Patents describe or purport to utilize any special or unique algorithms in the claim elements.[16] The Court rejects Factor2's unsupported assertions that merely changing the language used to describe otherwise generic computer functions alters the Asserted Patents' subject matter sufficiently to avoid collateral estoppel. *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("[R]ecitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible."). Factor2 supplies no explanation of how such minor differences "materially alter the question of invalidity," *Ohio Willow Wood*, 735 F.3d at 1342, and therefore cannot alter the Court's conclusion on the Identical Issue Prong.

### D.    The Other Elements of Collateral Estoppel Are Not Disputed.

The United States also asserts that the remaining prongs of collateral estoppel are satisfied. *See* Mot. at 14–16. Factor2 does not mention or dispute those arguments.[17] *See* Reply at 2–3. Having failed to substantively address these remaining prongs in its opposition brief, any

---

[16] Of the Asserted Patents, only Claim 9 of the '864 patent mentions an alternate formulation "wherein the generated digital code is transformed by algorithmic combination with user specific information for the user." Compl., Ex. C at *12. Aside from that passing mention of a generic "algorithmic combination," the '864 patent offers no explanation as to what kind of algorithm is envisioned or how the code is transformed. Rather, it is the invalidated '432 patent that relied on algorithms—particularly Claims 2, 9, 10, and 28—which similarly pose "algorithmically combin[ing] dynamic code and user specific information" to authenticate the user's identity. Mot., Ex. 2 at *11–12. Because an identical dependent claim appears in the '432 patent, Factor2's argument regarding the '864 patent falls flat. In contrast, many of the other Asserted Patents explicitly disclaim utilizing algorithms for code generation, criticizing that where "passwords are generated using an algorithm that is based on both a unique user ID and the current time, [that] makes the next generated password guessable." Compl., Ex. A at *9. Factor2's reliance on nonexistent "specialized algorithms" to distinguish *Asghari-Kamrani* is unfounded.

[17] At oral argument, Factor2 argued for the first time that apparatus and system claims must be analyzed differently from method claims, thus calling into question the applicability of collateral estoppel. *See* Tr. at 44:18–46:02. However, the case law supports no such distinction. *See Alice*, 573 U.S. at 226 ("This Court has long warned against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art." (cleaned up)); *Joao Bock Transaction Sys., LLC v. Jack Henry & Assocs., Inc.*, 76 F. Supp. 3d 513, 523 (D. Del. 2014) ("The fact that the asserted claims are apparatus claims, not method claims, does not change the court's analysis. Indeed, if that were the case, then applying a presumptively different approach to system or apparatus claims generally would reward precisely the type of clever claim drafting that the Supreme Court has repeatedly instructed the Court to ignore." (cleaned up)), *aff'd*, 803 F.3d 667 (Fed. Cir. 2015); *cf. SmartGene, Inc. v. Advanced Biological Lab'ys, SA*, 555 F. App'x 950, 954 (Fed. Cir. 2014) (affirming waiver of argument insisting upon "'a different analysis as to the abstractness issue' between system and method claims" where issue was not briefed and only "alluded to" at oral argument).

arguments Factor2 might have had are waived.  *See Superior Waste Mgmt.*, 169 Fed. Cl. at 296–97 (collecting cases).  Although the Court need not resolve those undisputed issues, as set forth below, the Court generally agrees with the United States.

Even before applying the four-prong test for collateral estoppel, privity is a necessary precursor for non-mutual estoppel.  "The party against whom preclusion is asserted must also have been a party or been in privity with a party to the prior adjudication."  *Uniloc*, 52 F.4th at 1346 n.4.  The United States argues that "Factor2 is wholly owned by one of the named inventors," and "the named inventors . . . executed the exclusive license of the Asserted Patents on behalf of . . . Factor2."  Mot. at 15.  Indeed, Nader Asghari-Kamrani and Kamran Ashari-Kamrani are listed as the inventors for each of the Asserted Patents as well as the '432 and '837 patents.  *See, e.g.*, Compl., Ex. A at *1; Mot., Ex. 1 at *2.  These are the same plaintiffs named in the *Asghari-Kamrani* case.  *See* 2016 WL 3670804, at *1.  The United States attaches additional USPTO documentation showing the Asghari-Kamrani brothers jointly owned 100% interest in each of the Asserted Patents.  *See* Mot., Exs. 3–8.  On February 2, 2021, all interest in the Asserted Patents was assigned to AmeriTech Solutions, Inc. ("AmeriTech"), by the Asghari-Kamrani brothers as both assignor and assignee.  *See id.* Ex. 10.  Then on November 11, 2023, Ameritech assigned an exclusive license in those patents to Factor2.  *See id.* Ex. 11.  Nader Kamrani[18] signed that assignment on behalf of both AmeriTech and Factor2 as licensor and licensee.  *See id.* at *5.  Indeed, Factor2 "does not dispute that it is in privity with the named inventors."  Resp. at 2; *see also* Am. Compl. ¶ 3 ("Plaintiff is an LLC wholly owned by an original owner of the Patents-in-Suit.").  The Court is satisfied that Factor2 is in privity with at least one of the plaintiffs from the *Asghari-Kamrani* litigation previously before the Eastern District of Virginia.

The remaining prongs of collateral estoppel are whether the identical issue was "actually litigated," "determined by a valid and final judgment," and "essential to the prior judgment," *Uniloc*, 52 F.4th at 1346, or alternatively whether "the party against whom estoppel is invoked had a full and fair opportunity to litigate the issue in the first action," *Innovad*, 260 F.3d at 1334.  The United States argues there is "no question that the issue of patent subject matter eligibility was actually litigated, determined by a valid and fair judgment, and essential to the judgment."  Mot. at 15.  The United States points out that patent eligibility "was the only issue the district court reached in dismissing the complaint," and that decision "was reviewed on appeal by the Federal Circuit, which upheld the judgment."  *Id.* at 15–16 (citing *Asghari-Kamrani*, 2016 WL 3670804, at *5–6; *Asghari-Kamrani*, 737 F. App'x at 542).  The United States further notes that Factor2's response "does not dispute that that [sic] the issue of patent ineligibility was actually litigated, determined by a valid and fair judgment, and essential to that judgment."  Reply at 3.  The Court has reviewed the docket of the *Asghari-Kamrani* case, which the district court also summarized in its section on procedural history.  *See* 2016 WL 3670804, at *1.  The Court notes extensive briefing on the USAA's motions to dismiss, including multiple opportunities to amend as well as oral argument on the issue of patent eligibility.  *See id.*  The *Ashari-Kamrani* court found the '432 patent invalid because its claims "are directed to an abstract idea and thus ineligible for patent protection."  *Id.* at *6.  The Federal Circuit summarily affirmed on appeal, *Asghari-Kamrani*, 737 F. App'x at 542, and the Supreme Court denied certiorari, 587 U.S. at

---

[18] The parties do not suggest that this is anyone other than Nader Asghari-Kamrani.

919.  Thus, the remaining prongs for collateral estoppel, however framed, are more than satisfied here.

Accordingly, because the United States has established all necessary prongs of collateral estoppel, Factor2 is precluded from relitigating identical issues that were previously litigated and determined in the *Asghari-Kamrani* case.  As explained above, the Asserted Patents are substantially identical to the previously invalidated '432 patent, and therefore collateral estoppel applies to the issue of patent eligibility as to the Asserted Patents.  The United States' Motion to Dismiss must be granted.

### III.   The Court's Determination on Collateral Estoppel Makes It Unnecessary to Reach Factor2's Patent Eligibility Arguments.

The United States argues in the alternative that the Court should dismiss Factor2's claims because the Asserted Patents are directed to abstract ideas and therefore patent ineligible.  *See* Mot. at 20–29.  Because the Court has already found that Factor2 is collaterally estopped from asserting those claims, the Court need not reach the question of patent eligibility as to each of the Asserted Patents. "Even if the court disagrees with the factual findings or legal rulings, those findings or rulings remain binding" because collateral estoppel applies.  *Uintah Ute Indians of Utah v. United States*, 28 Fed. Cl. 768, 778 (1998).  Indeed, the entire purpose of collateral estoppel is to conserve judicial resources by avoiding the relitigation of identical issues.  *See Uniloc*, 52 F.4th at 1349.

### IV.   Dismissal With Prejudice Is Appropriate.

"The Court has considerable discretion in deciding whether to dismiss a case with or without prejudice," and "no precise formula governs" that decision.  *Lodge Constr., Inc. v. United States*, 159 Fed. Cl. 414, 425 (2022) (quotations and citations omitted); *see also Tyco Healthcare Gp. LP v. Ethicon Endo-Surgery, Inc.*, 587 F.3d 1375, 1380 (Fed. Cir. 2009).  A dismissal without prejudice allows a party to cure the defect in its claims and litigate the issue in the future. *See TycoHealthcare Grp.*, 587 F.3d at 1380.  A dismissal with prejudice, in contrast, bars future actions between the parties involving the same claim.  *See id.*  Dismissing with prejudice is appropriate when a party's claim fails as a matter of law or has an incurable defect. *See Sunoco, Inc. v. United States*, 129 Fed. Cl. 322, 332 n.7 (2016).

This case warrants a dismissal with prejudice because collateral estoppel precludes Factor2 from litigating its claims in this or a future suit.  *See generally, e.g.*, *Bondyopadhyay*, 149 Fed. Cl. at 190-95, *aff'd*, 850 F. App'x 761 (Fed. Cir. 2021) (dismissing case with prejudice where collateral estoppel barred claims); *Pacetti v. United States*, 50 Fed. Cl. 239, 245-48, 254 (2001) (same); *Martin v. United States*, 30 Fed. Cl. 542, 543-51, *aff'd*, 41 F.3d 1519 (Fed. Cir. 1994) (same).  Indeed, allowing Factor2 to refile and pursue these issues in future litigation would undermine the judicial economy principles underlying the collateral estoppel doctrine. Accordingly, the Court dismisses the complaint with prejudice.

20

## CONCLUSION

For the foregoing reasons, the Court finds that Factor2 is collaterally estopped from raising the Asserted Patents against the United States. The Court has **GRANTED** the United States' Motion to Dismiss, ECF No. 11, pursuant to Rule 12(b)(6), and hereby clarifies that the Amended Complaint, ECF No. 10, is **DISMISSED** with prejudice. The Clerk of Court shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

_____
ROBIN M. MERIWEATHER
Judge